JOSE J. AMADOR *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. ILLINOIS BELL TELEPHONE COMPANY *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—91—0361, 1—91—0982 cons.

Opinion filed August 28, 1992.—Rehearings denied October 2, 1992, and November 16, 1992.—Modified opinion filed October 9, 1992.

Clinton A. Krislov and Jonathan Nachsin, both of Krislov & Associates, Ltd., and John J. Lowrey, of Lowrey & Smerz, Ltd., both of Chicago, for appellants.

Edward A. Butts, John C. Gockley, and Robert Guritz, all of Chicago, for appellee Illinois Bell Telephone Company.

JUSTICE MURRAY delivered the opinion of the court:

Pursuant to Supreme Court Rule 307 (134 Ill. 2d R. 307), Jose J. Amador (Amador) filed an interlocutory appeal from the January 31, 1991, order of the circuit court which denied Amador's request for a segregated fund (No. 1—91—0361), and another interlocutory appeal from the March 19, 1991, order of the circuit court which denied Amador's request for the impoundment of certain funds collected by Illinois Bell Telephone Company (IBT) (No. 1—91—0982).

The appeals have been consolidated by order of this court dated June 26, 1991.

BACKGROUND

In 1987, the Federal Commerce Commission (FCC) instituted various subsidy programs for the purpose of assisting low-income groups in obtaining local telephone services. (47 CFR §69.203 (1991).) The Illinois legislature then enacted section 13—301 of the Universal Telephone Service Protection Act of 1985, directing the Illinois Commerce Commission (ICC or Commission) to participate in these Federal programs and to assist local telecommunication carriers to develop pricing mechanisms that would facilitate customer access to telecommunication services. Ill. Rev. Stat. 1989, ch. 111²⁄₃, pars. 13—301(a), (c).

Subsequently, the ICC opened a rulemaking docket (docket 87—0432), making local exchange telecommunication carriers respondents to the docket and giving notice to the public. Proceedings were held and a plan known as "Link-Up I" was adopted by the Commission. (83 Ill. Adm. Code §757.10 (1991).) This plan required local exchange carriers to participate in Federal subsidy programs which would help defray the cost of installation charges on new telephone service for low-income groups.

After further hearings, 83 Ill. Adm. Code §757 was amended to include a second program known as "Link-Up II." Under the Link-Up II program, the ICC required local exchange carriers to add a 15-cent-per-line surcharge onto their customers' access line rate (except those low-income customers who were to be recipients under the program). The monies collected through this surcharge would be matched by Federal dollars pursuant to the Subscriber Line Charge Waiver Program adopted by the FCC in 47 CFR §69.104(k) and then applied by the carriers to the monthly service charges of low-income customers to lower their costs for telephone service.

The ICC gave final approval of the Link-Up II program in an order released October 3, 1990. IBT complied with this ICC ruling, filed tariffs to implement the ruling effective February 1, 1991, modified their systems to make the necessary rate changes and provided notice to their customers.

On January 30, 1991, Amador, as representative of all persons similarly situated, filed a class action law suit and declaratory action against IBT and the ICC, seeking to have the 15-cent surcharge declared illegal as a form of discrimination based upon

wealth.[1] The complaint further alleged that the surcharge was a violation of the Public Utilities Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—101 et seq.), a violation of the equal protection clauses of the United States Constitution and the Illinois Constitution and an unjust enrichment of Illinois Bell.

As and for relief Amador sought a declaration that the surcharge was illegal, compensatory damages, restitution, interest and attorney fees. Amador also asked that a segregated protest fund be created and that IBT be ordered to deposit into this fund the 15-cent surcharge monies collected. Amador's request for a segregated fund was also presented as an emergency motion on January 31, 1991. The motion was denied by the lower court on the basis that Amador failed to exhaust his administrative remedies.

Amador then filed an interlocutory appeal (No. 1—91—0361) from the trial court's denial of the motion for the creation of a segregated fund. After filing the notice of appeal, an emergency motion for the creation of a segregated fund was presented to this court. This court denied the motion in an order dated February 20, 1991. Amador then petitioned for leave to appeal to the supreme court and, in addition, sought a writ of mandamus to compel the circuit court to create a fund. The writ was denied April 17, 1991, and leave to appeal to the supreme court was denied June 5, 1991.

In the meantime, in an order dated March 15, 1991, the ICC repealed, on an emergency basis, 83 Ill. Adm. Code §757. Pursuant to this new order, the Link-Up II program was terminated effective March 25, 1991, less than two months after it was implemented. In the ICC order repealing 83 Ill. Adm. Code §757, the Commission found that Link-Up II violated section 13—301(a) of the Public Utilities Act.

Amador responded by filing a new emergency motion asking that the surcharge monies already collected be impounded. The circuit court denied the motion and an appeal of the order was taken (No. 1—91—0982) and later consolidated with the first appeal. The supreme court refused to grant Amador's motion for direct appeal brought pursuant to Supreme Court Rule 302(b).

While the present appeals pended in this court, Amador continued to pursue the class action in the lower court. The complaint was amended on February 27, 1991, by adding count VI, in which it was

---

[1]Subsequently, another complaint entitled Diamond Envelope Corp. v. Illinois Bell Telephone Co. (91—CH—1354), was filed on behalf of business customers who were charged the 15-cent surcharge. This case was consolidated with the Amador action. Also, additional plaintiffs John C. Pierce and Edward Johnson joined the Amador suit.

alleged that the surcharge was a tax, and it was amended again in April 1991 at which time Amador added as defendants the commissioners of the ICC, in their individual capacity.

Subsequently, IBT, the ICC and its commissioners all filed motions to dismiss the complaint against them. On August 14, 1991, dismissal was granted as to the ICC and the individual commissioners, but denied as to IBT. The trial court certified as a class the IBT customers who had paid the surcharge. The trial court also found that the surcharge was a tax and not a rate. No appeal was taken from this order and the action continues to pend in the lower court against IBT.

OPINION

We now turn our attention to the consolidated appeals before this court. The issue is whether the trial court erred by refusing to create a segregated fund and then by refusing to impound the funds already collected. The plaintiffs' class argues principally that the refusal to create a fund denied them a meaningful remedy from an illegally imposed tax.

The trial court apparently denied the motion for the creation of a fund finding that plaintiffs failed to exhaust their administrative remedies. IBT asks that we uphold the trial court's ruling on that basis, but also contends that the creation of a fund would have violated IBT's constitutional rights since it would have required IBT to have given indigent clients a discount on their telephone service but would have denied them the funding for such a program. IBT further argues that the surcharge, having been instituted by order of the ICC, makes ICC an indispensable party to the action. Since ICC was dismissed from the action below and the dismissal was not appealed by plaintiffs, IBT contends that plaintiffs should be banned from proceeding against IBT for lack of an indispensable party, *i.e.*, ICC. Finally, IBT contends that because the surcharge was instituted at the behest of the ICC and in accordance with an ICC order, plaintiffs are not entitled to a refund.

Before discussing the merits of the appeal, we must discuss the indispensable party issue raised by IBT. IBT contends that ICC and its commissioners are necessary parties to the action below and their dismissal from the action, which was not appealed by the plaintiffs and is now final, precludes the further pursuit of the claim against them. Therefore, IBT argues that the appeal should be dismissed.

Amador disagrees. Amador argues that ICC is not a necessary party to this appeal. Conversely, Amador argues that ICC's status should not be an issue here. Amador believes that because ICC was a party to the action at the time that the lower court's rulings were made and when notice of appeal was filed, ICC, in fact, has remained a

party to the appeal even though ICC has not participated in the appeal and was subsequently dismissed from the action below by the trial court.

We find that we must agree with IBT and dismiss this appeal. If we were to rule in favor of plaintiffs in this interlocutory appeal, ignoring the fact that ICC and its commissioners have been dismissed below, our decision would be moot and unenforcable if ICC and its commissioners were to be deemed indispensable parties to the action below. In such an event, any decision in favor of plaintiffs here would be a hollow victory and an exercise in judicial futility. Therefore, we find that whether ICC is found to be a necessary party to the cause of action below directly affects our ability to dispose of the appeal before this court. Therefore, we must dismiss this appeal and remand for further hearings below so that the trial court can rule upon IBT's claim that the dismissal of the ICC and its commissioners bars the further pursuit of the claim against IBT.

As further support for our decision to dismiss this appeal, we note that it has been brought to this court's attention that another class action entitled *Kramer v. Barnich and the Illinois Commerce Commission* (92—CH—2240) (*Kramer*), was filed on March 3, 1992. This case involves the same issues as in the Amador case and was tendered by the same attorney as in the Amador case. The *Kramer* case, although not consolidated with the Amador case by the court below, could be adversely affected if we were to rule on this appeal. Certainly a decision on this appeal would be *res judicata* to all members of the class in the Amador case, but it could also have estoppel effect on the class in the *Kramer* case.

In addition, since the ICC and its individual commissioners are once again parties to the underlying matter as named defendants in the *Kramer* case, we believe that a decision on this appeal could substantially affect the rights of these parties, who are not presently before this court.

For all the reasons stated above we dismiss the appeal. We believe that this is the most just procedure in this case under the circumstances.

Appeal dismissed; case remanded.

LORENZ and GORDON, JJ., concur.